WILLIAM P. O'BRIEN, Respondent, v. T. A. HASLAM, Appellant.

(167 N. W. 487.)

**Prior lien — waiver of — in favor of inferior lien — evidence does not show — verdict — judgment — appeal.**

This is an appeal from a judgment on a verdict against Haslam for $273.55, the price of 269½ bushels of seed wheat. *Held*, that O'Brien did not waive his prior lien in favor of a second lien claimed by Haslam, the appellant. The verdict is well sustained by the evidence. It is clearly right and the judgment is affirmed.

Opinion filed January 31, 1918.  Rehearing denied April 27, 1918.

Appeal from the District Court of Ramsey County, Honorable *C. W. Buttz*, Judge.

Defendant appeals.

Affirmed.

*Brennan & Brennan* (*E. T. Burke,* on oral argument), for appellant.

An action for conversion will not lie for disposing of property with authority.  Coulter v. Cummings (Neb.) 142 N. W. 109; Siegel-Campion Live Stock Com. Co. v. Holly (Colo.) 101 Pac. 68; Chase v.

Blaisdell, 4 Minn. 90; Doyle v. Burns (Iowa) 99 N. W. 195; Carlson v. Jordon (Neb.) 93 N. W. 1130; Tousley v. Board of Education (Minn.) 40 N. W. 509; Griffin v. Bustle (Minn.) 40 N. W. 523.

If the owner of property consents to the property being disposed of he cannot claim conversion. There is no tort in such case. 38 Cyc. 2009, note 16; Taughter v. N. P. Ry. Co. 21 N. D. 111, 129 N. W. 747; (Idaho) 81 Pac. 114; Austin v. McMaine (Ind.) 43 N. E. 141.

Trover is not maintainable for conversion of money, unless there exists an obligation to return the specific money intrusted to defendant's care. Shrimpton & Sons v. Culver (Mich.) 67 N. W. 907.

Plaintiff's books were the best evidence and should have been produced on the defendant's demand. Jones, Ev. § 201, Spec. 18 & 19.

The issue with Haslam was clear and in no way involved plaintiff's supplies to Stanley, as no lien was claimed for them. Grand Tower Co. v. Phillips, 90 U. S. 471–480, 23 L. ed. 71; Union Mut. Life Ins. Co. v. Buchanan, 100 Ind. 63; Glecker v. Slavins (S. D.) 59 N. W. 323; Wheless v. Rhodes, 70 Ala. 419.

It did not appear from the testimony that the credits for which the liens were claimed had expired at the time of the alleged conversion. Parker v. Bank, 3 N. D. 87, 54 N. W. 313; Elestad v. Elev. Co. 6 N. D. 88, 69 N. W. 44; 9 N. D. 692, 693.

*Flynn & Traynor,* for respondent.

The point that the claim is not shown to have been due or in default is raised for the first time on this appeal. This is not permitted. The matter should have been presented in the trial court. It is an entirely new theory. Delaney v. Western Stock Co. 19 N. D. 630; Casey v. First National Bank, 20 N. D. 211; Crisp v. Bank (N. D.) 155 N. W. 78; 2 Cyc. 670.

Where a verdict has substantial support in the evidence, the supreme court will not weigh conflicting evidence, nor will it disturb such verdict upon the ground of an alleged insufficiency of the evidence. Blackorby v. Ginther, 34 N. D. 248; S. A. Patrick & Co. v. Austin, 20 N. D. 261; Nilson v. Horton, 19 N. D. 187; Casey v. Bank, 20 N. D. 211; Acton v. Fargo & M. St. R. Co. 20 N. D. 434; Rickel v. Sherman, 158 N. W. 266; Malmstad v. McHenry Tel. Co. 20 N. D. 21; Hayne, New Trials & Appellate Review, § 97; 29 Cyc. 1009, and note.

Robinson, J. This is an appeal from a judgment on a verdict

against Haslam for $273.55.   During the year 1914 in Ramsey county one Stanley farmed about 619 acres of land in sections 14, 15, 22–155–65.  O'Brien furnished him seed grain, binding twine, paid labor bills and did the threshing.  He duly filed two seed liens for $315 and $112.-55 and a threshing lien for $400.  These were prior to all other liens. The seed liens were for 250 and 19½ bushels of wheat at 90 cents a bushel, 150 bushels of barley, 100 bushels of oats, 20 bushels flax. Subject to said liens Stanley gave Haslam a chattel mortgage on all of the crops to secure $537.55, and he gave O'Brien a second mortgage on the same crops.  The O'Brien seed wheat was sown on the south side of the highway between sections 15 and 22.  The Haslam mortgage was partly given for seed wheat sown on the north side of the highway. On the farm and south of the highway there was a granary about 48x18 feet with the ends facing east and west.  It was divided into two parts, the east part being 30x18.  O'Brien did the threshing.  The Haslam wheat was first threshed and it was put into the west end of the granary. It was about 800 bushels.  The O'Brien wheat was nearly 1,200 bushels, and it was put in the east end of the granary.

As O'Brien paid labor bills, binding twine, and threshed all the grain, he had ample reason and opportunity to know where the grain was put.  He ordered a car to ship the grain from the east part of the granary, and his car was spotted at Grand Harbor.  Then as O'Brien had no experience in shipping wheat his friend Haslam kindly offered to do the shipping for him.  O'Brien innocently assented and his car-load of 1,147 bushels of wheat was at once shipped by Haslam.  He shipped it in his own name, saying nothing to O'Brien, and he at once drew on the consignee for $700.  (That was October 3, 1916.)  He received from the car of wheat the net sum of $921.19.  Then in No-vember he paid the threshing bill and concluded to hold the balance to apply on his mortgage.

Haslam testified that when O'Brien accepted his offer to do the shipping he said:  "For me to go ahead and load the car and take out my mortgage, and whatever should be left over and above, to turn over to him."  That story is highly improbable.  O'Brien denied it and the jury did not believe it.  O'Brien's threshing lien and his seed liens were clearly ahead of all other liens.  That was not disputed.  Hence, it would have been a silly thing for him to have said to Haslam: "You

go ahead and sell the wheat and apply the proceeds to your second lien, and if there be anything left over then let me have it to apply on my prior seed lien and threshing lien." O'Brien had furnished Stanley some grain, feed, and groceries, and paid for the twine and labor and expenses. He had done everything necessary to run the farm and to secure the crop and had his wheat safe and his car spotted. Hence it is too much to ask a jury or a court to believe that O'Brien, without any consideration, agreed that his wheat lien should be made second to the Haslam mortgage. The court instructed the jury to the effect that if such an arrangement was made they should find for Haslam. The court said: O'Brien had a right to waive his lien on the wheat. Certain it is that Haslam has no reason to complain of the charge of the court or of the verdict. The verdict is for the value of 269½ bushels of wheat at 90 cents a bushel, and interest; and it is well sustained by the evidence.

In any view of the case on all the evidence the verdict could not well have been otherwise. That is a sufficient answer to the numerous assignments of error. There is no question of consequence, as to whether or not Haslam wrongfully shipped the wheat in his own name or wrongfully received the price in his own name. As the jury found and as the fact is clear and patent, O'Brien had a first lien on the wheat for the thresh bill and for the price of his seed wheat, and when the first lien was turned into money, it was the money of O'Brien, and Haslam had no right to retain it for one minute, and he and his counsel should have known that fact. The judgment is affirmed.